FILED
SUPERIOR COURT
OF GUAM

2023 NOV 15 PM 4: 01

CLERK OF COURT

**IN THE SUPERIOR COURT OF GUAM**

**HAGÅTÑA, GUAM** BY:_____

|  |  |
|---|---|
| **PEOPLE OF GUAM** ) | Criminal Case No. CF0253-23 |
| ) | Police Report No: 23-09813/23-09815 |
| ) | |
| Plaintiff, ) | **DECISION AND ORDER** |
| vs. ) | **DEFENDANT'S MOTION TO** |
| ) | **SUPPRESS PHYSICAL EVIDENCE** |
| **PAGSISIHAN, RAYMOND PADUA** ) | **AND STATEMENTS** |
| *aka* **PAGSISIHAN, RAYMOND LOUIS** ) | |
| DOB: 07/16/1971 or 07/16/1974 ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on July 10, 2023, for an evidentiary hearing on Defendant's Motion to Suppress Physical Evidence and Statements (hereinafter "Motion to Suppress"). Defendant was represented by Peter J. Santos, Alternate Public Defender. Assistant Attorney Kristine B. Borja appeared for the People of Guam. The Court took the matter under advisement and having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues this Decision and Order **GRANTING** the Defendant's Motion to Suppress.

## BACKGROUND

Defendant is charged with the Possession of a Schedule II Controlled Substance with Intent to Deliver (as a Third Degree Felony). Indictment April 24, 2023. On June 15, 2023, the instant Motion to Suppress was filed and an order sought from the Court suppressing the verbal statements—as well as all physical evidence—finding that Guam Police Department ("GPD")

illegally seized the evidence. Motion to Suppress, June 15, 2023. The People filed an Opposition to the Motion to Suppress. People's Opp. to Def.'s Mot. to Suppress Physical Evidence and Statement, June 30, 2023 (hereinafter "People's Opp."). On July 10, 2023, the Court held an evidentiary hearing on the motion. Minute Entry, July 10, 2023.

In his motion, Defendant argues that the Officers never had probable cause to believe he had committed any crime and, consequently, the Officers went on a fishing expedition, conducting a search of Defendant to eliminate any potential threat to their safety that went beyond the scope of the consent given by Defendant. Motion at 2–6. Defendant continues that since Defendant's incriminating statements regarding the contraband were discovered pursuant to an illegal search of his person, such statements were obtained in violation of his Fifth Amendment right against self-incrimination. *Id.*

The People respond that the evidence seized in this matter should not be suppressed because it was seized under the search warrant exception of consent and the Defendant voluntarily made statements to the police. People's Opp. at 2–6. The People argue that the Officers did not detain Defendant upon arriving at the scene because no traffic stop was being conducted. *Id.* The encounter began with the officers arriving to help the Defendant's with a stalled vehicle. *Id.* The encounter was consensual, as the officer was not aggressive; he did not draw a weapon, state anything related to the encounter, and there are no facts that show the officer was preventing the Defendant from ending the encounter and leaving in any way. *Id.* The Defendant was requested to step out of the vehicle after the contraband and paraphernalia was observed and seized from the co-Defendant. *Id.*

Based on the six factors in *Chargulaf,* the People assert that Defendant's consent to be searched was made voluntarily. *Id.* The Defendant was free to end the encounter and was not

pressured. *Id.* There are no facts that show the officer the officer was aggressive in manner or speech. *Id.* There are no facts that any misrepresentation or promises were made by the officer. *Id.* The encounter was consensual, as the Defendant was not placed under arrest until the field test of the substance in the small clear reusable bag yielded a presumptive positive for methamphetamine. *Id.* The Defendant was on a roadway in Dededo and therefore was in a public place. *Id.* Finally, the Defendant gave consent to search his person, and there are no facts to show the Defendant objected in any way to the search. *Id.*

With regards to statements made after finding the baggie of suspected methamphetamine violated his Fifth Amendment rights, Miranda rights did not apply to when the Defendant made the statements, and the statements were made voluntarily. *Id.* Thus, there was no violation of Defendant's rights under the Fourth or Fifth Amendment rights and that the Court should not suppress the evidence and statements. *Id.*

**FINDINGS OF FACT**

On July 10, 2023, the Court conducted an evidentiary hearing on the motion. Minute Entry, July 10, 2023. GPD Officer I John Ibanez and GPD Officer II Nate Lorenzo were the two witnesses called by the People. Digital Recording at 11:54:21–12:39:25. Defendant did not call any witnesses. *Id.* Based on the testimony received from the witness the Court finds:

On April 12, 2023, GPD Officer Ibanez responded to a call of a stalled vehicle occurring near 298 Biradan Langet in Dededo, Guam. *Id.* Officer Ibanez testified that he observed two vehicles, a Toyota facing northbound on the northbound travel portion, while a Nissan was facing south along the northbound travel portion. *Id.* He observed that, while one vehicle had stalled out and the driver co-Defendant Billy Alfonso (hereinafter "Billy") sought assistance of a

jumpstart from the movant Raymond Pagsisihan (hereinafter Defendant), the latter's vehicle had also died out. *Id.* The Officers were attempting to help both drivers start their vehicles, but both vehicles were still inoperable. *Id.* While speaking to Billy by his vehicle, Officer Ibanez observed in plain sight a green improvised glass pipe sticking out from the center console of his vehicle. *Id.* Billy was requested to step out of his vehicle where he was speaking with Officer Lorenzo. *Id.* A few seconds later, Officer Lorenzo informed him that he discovered numerous illegal narcotics (Schedule II) and clear resealable baggies on Billy's person. *Id.*

Meanwhile, Officer Ibanez approached Defendant, who was still seated in his vehicle, and who identified himself verbally. *Id.* Officer Ibanez requested that Defendant step out of the vehicle and explained his findings that Billy was found with illegal narcotics. *Id.* Defendant consented to a search of his person which Officer Ibanez acknowledged. *Id.* A check of Defendant's front left pocket of his light-blue jean shorts yielded a white USB thumb drive which appeared to be tampered with as its housing was loose. *Id.* Officer Ibanez opened the housing and found a concealed resealable baggy containing suspected Methamphetamines. *Id.* Officer Ibanez informed Defendant of his findings, to which Defendant uttered "I thought I left that at home". *Id.* Officer Ibanez then conducted a field test on its contents. *Id.* After the tests results returned came back as positive for methamphetamine, Officer Ibanez secured Defendant in handcuffs and informed him that he was under arrest, which Raymond acknowledged. *Id.* After securing Raymond in the rear of the patrol vehicle, Officer Ibanez conducted a check of Defendant's vehicle. *Id.* A check within Defendant's vehicle revealed a green plastic flashlight case tucked underneath the driver's seat which contained various crystal-like substances which field tested positive as methamphetamines. *Id.*

Later at the Dededo Precinct, the officers used the Custodial Interrogation Rights Form to advise the Defendant of his *Miranda* Rights. People's Opp. at 6. The Defendant refused to acknowledge and stated he got the methamphetamine from the Co-Defendant. *Id.*

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam via section 1421b(c) of the Organic Act of Guam. *See People v. Johnson*, 1997 Guam 9, ¶ 4. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09, 98 S. Ct. 330, 332 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 1878, 20 L.Ed.2d 889 (1968)). Every search or seizure must be reasonable under the circumstances to pass muster under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996).

### A. The initial stop and first search of Defendant was part of a routine traffic stop that progressed into a *Terry* stop based on reasonable suspicion.

The Court's analysis begins with a determination of the Defendant's initial interaction with GPD. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such question." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983) (citation omitted). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S.1, 19

n.16, 88 S.Ct. 1868, 1878 (1968). "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus." *Florida v. Bostick*, 501 U.S. 429, 439-440, 111 S. Ct. 2382, 2389, 115 L.Ed.2d 389 (1991).

Furthermore, a traffic stop is a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), 468 U.S. 796, 804 (1984). To "determine the reasonableness of an investigative detention a dual inquiry is made. Was the officer's action justified at its inception, and whether continued detention was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. at 20. Absent "reasonable suspicion," police extension of a routine traffic stop to conduct a "dog sniff" violates the Fourth Amendment. *Rodriguez v. United States*, 575 U.S. 1 (2015). Reasonable suspicion may not be derived from inchoate suspicion and unparticularized hunches. *United States v. Sokolaw*, 490 U.S. 1, 7 (1989). During a routine traffic stop the Fourth Amendment permits a law enforcement officer to request a driver's license, insurance and vehicle registration, run a computer check for warrants or stolen vehicles, and issue a citation. *Prouse*, 440 U.S. at 658-660 (1979).

The facts elucidated at the evidentiary hearing clearly indicate that the Officers' initial interests in Defendant and the vehicle were relative to the lending of aid in reviving two stalled vehicles. The Officers found Defendant in the location described in the report made to GPD of a

stalled vehicle. Digital Recording at 11:54:21–12:39:25. Officer Ibanez testified at that time of the initial encounter the Officers discovered that Defendant's vehicle was impeding the flow of traffic and thus the encounter became a routine traffic stop wherein the Defendant was not free to leave. *Id.* As such, the Defendant was not free to leave once the Officers arrived on the scene.

Defendant argues this seizure was illegal because GPD Officers had no reasonable suspicion that Defendant was a threat to their safety or engaged in criminal activity and thus were going on a "fishing expedition". Motion at 5. Yet, Defendant was in the location where the green improvised pipe was spotted, assisting the co-Defendant because one (and then both) vehicles had stalled, as described in the initial report to GPD. Having an objective, reasonable suspicion of criminal activity, Officer Ibanez did not violate Defendant's Fourth Amendment rights by engaging in a *Terry* search due to concerns of officer safety. When evaluating the surrounding circumstances of Defendant's initial encounter with the Officers, the Court finds they had reasonable suspicion to seize Defendant and to conduct a Terry search to ensure officer safety. Accordingly, GPD officers conducted a valid *Terry* stop when they first stopped Defendant.

**B. The first search of Defendant's person was invalid because, while Officer Ibanez obtained consent, consent ended after officer safety was ensured.**

A search or seizure made without a warrant is presumed to be unreasonable. *See Pennsylvania v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)). In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. *See id.*; *see generally United States v. Woodrum*, 202 F.3d 1, *6 (1st Cir. 2000) (recognizing that reasonable suspicion of criminal activity and voluntary consent are two situations which justify the seizure of the person in an automobile absent a warrant) (citations

omitted). The purpose of a *Terry* search is to ensure officer safety and the safety of the drivers on the road. *See Adams v. Williams,* U.S. 143, 146 (1972) ("The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable.."). A *Terry* pat down allows for the seizure of contraband, but only where the illegal nature of the item is plainly obvious based on feeling the object in question. *People v. Tuncap,* 2014 Guam 1, ¶ 26 (2014). (allowing seizure of contraband during a valid *Terry* patdown, but only where the item felt was clearly contraband without resort to additional manipulation). Voluntary consent is another recognized exception to the warrant requirement. *See People v. Santos,* 1999 Guam 1, ¶ 33 (citations omitted).

Officer Ibanez's first search of Defendant's person occurred without a warrant. Digital Recording at 11:54:21–12:39:25. While a warrantless search is generally unreasonable, Officer Ibanez testified that he obtained consent to search Defendant's person prior to placing him in the police cruiser. *Id.* Officer Ibanez stated his request to search Defendant's person stemmed from concerns about officer safety. *Id.* Since Officer Ibanez had observed the green improvised pipe in the co-Defendant's vehicle, he had a reasonable suspicion that criminal activity was occurring and needed to ensure he was not placing himself and his partner in danger. Officer safety is a valid reason to request consent to search a person's clothing, as a *Terry* stop permits a frisk to check for weapons. *Terry v. Ohio,* 392 U.S. 1, 30-31 (1968). Consequently, the Court finds that the first search of Defendant's person was constitutionally valid for purposes of a weapons frisk.

Yet, the Court notes that the scope of consent for the first search ended after Officer Ibanez completed the search for weapons. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the

typical person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). A typical person would expect that consent to the search ended after Officer Ibanez finished checking the Defendant's person to ensure officer safety while conducting the investigation of the co-Defendant. Officer Ibanez did not find any weapons on Defendant's person when he searched it. Digital Recording at 11:54:21–12:39:25. The absence of a weapon on Defendant's person should have dispelled any concerns Officer Ibanez had about officer safety. A pat down during a *Terry* stop does not permit the officers to confiscate Defendant's USB key and search the contents, unless the USB key resembled a weapon during the frisk or was obvious contraband.

Furthermore, the typical person would have understood consent for the search ended once the concerns about officer safety ended. Thus, the scope of the consent for the first search ended when Officer Ibanez completed the *Terry* search and failed to discover any weapons on Defendant's person. Therefore, the Court finds that the discovery of the contraband in the USB key on Defendant's person was the product of an unlawful search.

**C. GPD Officers only searched Defendant's vehicle because of the contraband discovered on Defendant's person during the illegal search.**

A search conducted without warrant is reasonable if the defendant voluntarily and knowingly consented to the search. *See generally Ohio v. Robinette*, 519 U.S. 33, 37–40. The Court determines whether the defendant voluntarily and knowingly consented by evaluating the totality of the circumstances, there is no *per se* rule. *See Schneckloth v. Bustmonte*, 412 U.S. 218, 227–246 (1973). An officer does not have to tell the defendant that he has the right to refuse consent for consent to be valid. *Id.*

Defendant claims the warrantless search of the vehicle, which this Court concludes occurred after Defendant had been placed under arrest, violated the Fourth Amendment. Defendant argues that, since they were restrained at the time of the search, even if the vehicle stop and arrest were proper police had no constitutional basis to conduct a search of the vehicle. Warrantless searches are "*per se* unreasonable under the Fourth Amendment," though certain exceptions exist. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id.* (citing *Weeks v. United States*, 232 U.S. 383, 392, 34 S. Ct., 58 L. Ed. 652 (1914). In *Gant*, the United States Supreme Court clarified and extended its prior holdings in the vehicle search context. The court held that while officers may not generally search a vehicle "incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle ... circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Gant*, 556 U.S. at 335.

The Court finds that the Officers' discovery of the contraband during the illegal search of Defendant's person and subsequent arrest prompted Officer Ibanez to search Defendant's vehicle. Officer Ibanez admitted that initially there was no cause to believe that the Defendant committed any type of crime, and that it was only after the discovery of the improvised green pipe that the officers asked to perform the weapons frisk which revealed the USB key. *Id.* Even if the Officer had reason to believe that evidence of the office of arrest might be found in the vehicle, it is apparent that the illegal search revealing the USB key with the hidden drug compartment is what motivated Officer Ibanez to search Defendant's vehicle.

Given that GPD unlawfully searched Defendant by going beyond the scope of a weapons frisk to investigate a small object that no reasonable person would mistake for a weapon, the Court finds that Defendant's consent was not given knowingly and voluntarily. In addition, the probable cause to search Defendant's vehicle was based on the contraband found by the illegal search.

Therefore, the search of Defendant's vehicle was unlawful and the Court orders the items found during the vehicle search suppressed.

**1. The remedy for an unlawful search is exclusion of the evidence at trial.**

The exclusionary rule bars the prosecution from using evidence at trial that the government obtained through a violation of the Fourth Amendment. *U.S. v. Shetler*, 665 F.3d 1150, 1156–57 (9th Cir. 2011) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 484–85 (1963)). The goal of the rule is to deter violations of the Fourth Amendment, including unreasonable searches and seizures. *Id.*

Therefore, because the Court finds the Officers discovered the USB key with the hidden compartment and the green flashlight, both of which contained suspected methamphetamines, during an unconstitutional search of Defendant's person and vehicle, the exclusionary rule operates to suppress such items from use against Defendant at trial.

**D. Under the fruit of the poisonous tree doctrine, the statements Defendant made during the interrogation are the product of the Fourth Amendment violation.**

Evidence, including verbal statements, gathered as a direct result of an unlawful search is "fruit of the poisonous tree" and is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *People v. Cundiff*, 2006 Guam 12 ¶ 41. Before suppressing evidence as a fruit of the poisonous tree, the Court must determine if the People obtained the challenged evidence because

of police exploitation of the initial illegality. *People v. Cundiff*, 2006 Guam 12 ¶ 41 (citing *Segura v. United States*, 468 U.S. 796, 804–05 (1984)). If the police arrived at the evidence by independent means, then the independent means purge the taint. *Id.* The People have the burden to "break the casual connection" between the unlawful search and the evidence that the Defendant alleges is fruit of the poisonous tree. *People v. Cundiff*, 2006 Guam 12 ¶ 41.

Following the discovery of the contraband on the Defendant's person, the Defendant made an incriminating statement with the utterance "I thought I left that at home". Digital Recording at 11:54:21–12:39:25. Following the Defendant's subsequent arrest and the discovery of contraband in the vehicle, Officer Ibanez brought Defendant to the Dededo GPD precinct and attempted to advise him of his *Miranda* Rights via a Custodial Interrogation Rights. *Id.* Defendant refused to acknowledge the form and made an incriminating statement during the attempt. *Id.* Officer Ibanez would not have requested that he answer questions at the GPD precinct if the unlawful search had not occurred. Officer Ibanez specifically stated that there was no evidence of the Defendant engaging in illegal activity until the *Terry* search of his person. Absent the searches, GPD would have concluded its investigation of the Co-Defendant and there would have been no reason to bring Defendant to the GPD precinct for interrogation.

Consequently, the only reason GPD Officers interrogated Defendant was because of the illegal search. Thus, the Court orders Defendant's statements made during interrogation suppressed in accordance with the exclusionary rule.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Physical Evidence and Incriminating Statements is hereby **GRANTED**.

SO ORDERED this NOV 1 5 2023 November day of ~~October~~, 2023.



_____
**HONORABLE ALBERTO E. TOLENTINO**
**Judge,**
**SUPERIOR COURT OF GUAM**